WILLIAM W. HARE, APPELLANT, V. JACOB H. WINTERER ET AL., APPELLEES.

FILED MAY 8, 1902.   No. 10,325.

1. **Finding of Fact.** The finding of a trial court upon an issue of fact, is conclusive in this court, unless clearly wrong.

2. **Bonus: Usury.** If the lender's agent exacts from the borrower, for the use of money, a bonus or commission, in addition to the highest lawful rate of interest, the transaction is a violation of the law against usury.

3. **Agent: Services: Knowledge of Lender.** Where a person through whose agency a loan was negotiated rendered valuable services to the lender, and there was no reason to suppose that such services were gratuitous, the court or jury will ordinarily be justified in presuming that the lender knew the borrower had been required to pay for such services.

4. **Judgment of Persons Having Adverse Interests.** It would seem to be a warrantable presumption of fact, based on common experience, that men who rely habitually in business transactions on the advice and judgment of persons representing adverse interests, seldom or never have money to loan.

5. **Evidence.** Evidence examined and found to justify the conclusion of the trial court that an agent who had negotiated a loan acted for the lender and not for the borrower.

APPEAL from the district court for Deuel county. Heard below before GRIMES, J. *Affirmed.*

*Hoagland & Hoagland,* for appellant.

*Wilcox & Halligan* and *James Harvey Hooper,* contra.

SULLIVAN, C. J.

This action to foreclose a real estate mortgage was brought by Hare against Winterer and, upon a trial of the issue raised by a plea of usury, was decided in favor of the defendant. By this appeal it is sought to reverse the judgment on the ground that it is not sufficiently supported by the evidence. The trial court made the following findings of fact:.

"1st. That on November 15, 1890, the defendants made, executed and delivered the note and mortgage sued upon, whereby they promised to pay to the plaintiff on November 15, 1895, the sum of $300.00 with interest thereon from date until paid, at the rate of ten per cent. per annum and that said mortgage covers the southwest $\frac{1}{4}$ of section 8, in township 16 north of range 42 west and said mortgage was duly recorded on the 17th day of November, 1890, in the mortgage records of Deuel county.

"2d. That at the time of making said loan, the plaintiff was a farmer and lawyer, residing at Groton, Tompkins county, New York; that the application for said loan was made by the defendant to one Van Marter, who was at that time a resident of Deuel county, and who has since died; that defendants application for said loan was by said Van Marter transmitted to the plaintiff; whether said application was written or oral does not appear; that in consummating said loan, the defendants had no correspondence or conversation with the plaintiff or other person other than said Van Marter, but did all of the business with and through said Van Marter.

"3d. That said Van Marter in making the contract for the loan sued upon, required that defendants should pay therefor, in addition to the payment of interest thereon at the rate of ten per cent. per annum, upon the full-face of the loan, a commission or bonus of three per cent. of the full amount of the face of said loan amounting to the sum of $9.00, as further compensation for said loan, as well as additional sum of $5.00 for abstract and ex-

penses in making the loan and the payment of said commission or bonus and said sum of $5.00 for abstract and expenses was agreed to by the defendants and said Van Marter at the time defendants made their said application to said Van Marter for said loan, the same to be paid by the defendants out of the proceeds of said loan when received.

"4th. That plaintiff made the loan sued upon on the application made by the defendants to said Van Marter; said Van Marter caused the note and mortgage sued upon to be drawn.

"5th. That in transmitting the money to be loaned to defendants, the plaintiff procured a draft for the sum of $300.00 payable to J. Winterer, one of the defendants herein, and sent the same to said Van Marter, with directions to turn the same over to defendants, when defendants executed a note and mortgage to plaintiff on their lands for the amount of the draft and produced an abstract showing the title all right; this direction was by letter written by plaintiff to said Van Marter, and accompanied said draft.

"6th. That on receipt of said draft and letter of direction by the said Van Marter, the defendants executed and delivered to said Van Marter, the note and mortgage sued upon, and received from said Van Marter the said draft for $300.00, which draft defendants caused to be cashed and within a day or two thereafter, paid said Van Marter out of the proceeds thereof, the sum of $14.00, pursuant to the agreement made between defendants and said Van Marter at the time defendants made their said application for said loan.

"7th. That in making defendants the loan sued upon, the plaintiff trusted and relied upon said Van Marter to draw the note and mortgage, examine the abstract, pass upon the title and do all things necessary to close the loan.

"8th. That altogether, the plaintiff made about 25 loans in number in the neighborhood or community where the defendants live, and that said Van Marter recommended

all loans asked for, and that said Van Marter recommended the loan herein involved."

With respect to these findings counsel for the plaintiff say: "The findings of fact by the court are a fair statement of such facts as shown by the evidence, except that the court failed to state that plaintiff did not place any money in the hands of Van Marter to loan for him; did not do any act which placed power in the hands of Van Marter to exact usurious interest and had no knowledge whatever that any loans or usurious interest were exacted." Whether there is any merit in counsel's criticism depends mainly upon the conclusions to be drawn from the facts found. It depends also to some extent upon certain testimony of the parties which is in substance here set out: The defendant testified that he did not employ Van Marter, but made application to him for a loan because he was known in the neighborhood as a money loaner; that Van Marter told defendant he was loaning money for Hare and could let him have $300; that when interest upon the loan became due Van Marter repeatedly demanded payment. The plaintiff testified that he had for some time been making loans in Deuel and Keith counties upon securities approved by Van Marter; that in making those loans he had no agent or representative in Nebraska and did not know who passed on the abstracts of title or who recorded his mortgages; that the interest upon most of these loans was collected by Van Marter and by him remitted in the usual way to Groton, New York. Plaintiff also testified that Van Marter, in making the loans, was acting for the borrowers.

The doctrine has been repeatedly asserted in this state that where an agent of the lender exacts for the use of money a bonus or commission from the borrower in addition to the highest lawful rate of interest, the transaction is usurious. *Hare v. Hooper,* 56 Nebr., 480, and cases there cited. In such case it is said the whole transaction is but one contract and that the principal, although ignorant of the wrongful act of his agent, is

affected by it. *Philo v. Butterfield,* 3 Nebr., 256; *Olmsted v. New England Mortgage Security Co.,* 11 Nebr., 487; *New England Mortgage Security Co. v. Hendrickson,* 13 Nebr., 157. In the *Olmsted Case,* MAXWELL, C. J., after remarking that the borrower can not ground a defense of usury upon the acts of his own agent, goes on to say: "But on the other hand, if a person places money under the control of another to loan for him, and the agent charges the borrower unlawful interest, or receives a bonus from him for such loan, either with or without the knowledge of the principal, he is affected by the act of his agent. The reason is, the principal has entrusted the business of making loans to him and has placed the money in his hands for that purpose, and in transacting the business by agency, there can not be a distinct agreement between the lender through his agent with the borrower. and a different one between the agent and borrower, as it is in consideration of the loan that the unlawful interest or bonus is paid. The whole transaction is but one contract, which being made by his agent, the lender is bound by it."

In this case it is not necessary to go to the length of holding that the principal is affected by the misconduct of his agent whether he had knowledge of it or not. From the evidence in the record it is, in our judgment, a warrantable conclusion that Van Marter was the plaintiff's agent and that the plaintiff knew the loan was made in violation of the statute against usury. The draft for $300 was in Van Marter's hands before the mortgage was drawn. Whether the loan should be made depended entirely upon him. If he approved the form of the mortgage, the manner of its execution and the defendant's title, the loan would be made; otherwise it would be rejected. The theory that Van Marter represented the defendant and acted only for him in the transaction may be plausible, but we can not believe it is sound. Men who trust so much to persons representing adverse interests are not ordinary products of modern civilization; they are anachronisms;

they belong either to the golden age or the millennium; and in any case it is moderately safe to assume that they are not members of the legal profession, who indulge a passion for farming and still have money to loan. Certainly the trial court had very good reasons for holding that the plaintiff, a man of wide experience, a farmer, capitalist and lawyer, had, in the transaction in question, relied upon his own agent, a person who, by reason of the agency, would be bound in law and morals to render him faithful and disinterested service, rather than upon the agent of the defendant, a person whose duty and allegiance would belong to the defendant alone. If this were an action by Hare against Van Marter to recover damages for negligence, it would hardly be contended that the evidence would not justify a finding of agency. If the property, when the loan was made, was burdened with an inchoate lien for a large amount in favor of mechanics or materialmen, it would hardly be claimed that Van Marter, having knowledge of this fact, was not guilty of a breach of duty to Hare. Suppose the defendant held the legal title in trust for a person in possession of the land, and this was known to Van Marter at the time he received the mortgage and delivered the draft. In such circumstances would any one doubt that Hare had been injured by the misconduct of his own agent? The services rendered by Van Marter were distinctly beneficial to the plaintiff; part of such services concerned no one else. The plaintiff knew what was being done for his advantage and protection and he had no reason to suppose that Van Marter was working for nothing. He evidently understood that the agent was to receive his compensation from the defendant for recommending the land as adequate security, for acting as custodian of the $300 draft, for passing judgment on the mortgage and abstract, for recording the mortgage, and for collecting interest on the loan. The charge for these services, plus interest at ten per cent., was the consideration which defendant was to pay for the use of the borrowed money. The plaintiff, it is true, was

to receive directly nothing but interest on the loan, but by requiring defendant to pay the agent's charges he received indirectly the amount of those charges. The rule forbidding a lender to receive or contract for more than ten per cent. is clearly violated when the borrower is required to pay, in addition to such interest, the amount charged by the lender's agent for services rendered to the lender in negotiating the loan. Under circumstances quite like those we are here considering the supreme court of Georgia in *Merck v. American Freehold Land Mortgage Co.*, 7 S. E. Rep., 265, held that the person through whose agency the money was loaned was an intermediary, and sustained a judgment of the trial court in favor of the lender. The opinion was written by a very eminent jurist, but we are not satisfied that his reasoning is sound; and if we were so satisfied, we could not follow the decision without rejecting the authority of our own cases. One who represents another in a business transaction is his agent; and the relationship of the parties to each other, and the consequences flowing from such relationship, are, it seems to us, in nowise changed or affected by calling the agent an intermediary. A person who does an act by another in contemplation of law does it himself, however you may describe the legal connection between the parties.

The judgment heretofore rendered by this court is set aside, and the judgment of the district court is

AFFIRMED.