MARY J. PRICE, APPELLANT, V. BURLINGTON REFRIGERATOR EXPRESS COMPANY ET AL., APPELLEES.

FILED OCTOBER 23, 1936. NO. 29878.

*Anson H. Bigelow,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda* and *Edwin Cas-sem, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ.

CARTER, J.

Plaintiff commenced this action under the workmen's compensation law for compensation for the death of Vern Price, her husband, from an accident arising out of and in the course of his employment with the Burlington Refrigerator Express Company. The trial court dismissed the case and an appeal has been taken to this court.

The main question necessary for this court to determine is whether it has been established by the evidence that the deceased died as a result of an accident. This will necessitate an examination of the evidence in the record on that point.

The only competent evidence pertaining to an accident was that given by the witness H. O. Dooley. Mr. Dooley's testimony is to the effect that on or about March 1, 1931, he and deceased were doing repair work in a refrigerator car for the Burlington Refrigerator Express Company; that the deceased was taking down a bunker beam and in some way it fell and struck him and that deceased appeared dazed for a few minutes thereafter. He further testified that he observed a lump on deceased's throat and noticed its condition from time to time thereafter. On cross-examination Mr. Dooley stated that he did not know the date or even the year that the accident happened; that he did not see the bunker beam strike the deceased; and that he did not know whether he first observed the lump on the throat of the deceased before or after the accident.

The record further shows that a bunker beam is five inches wide, two inches thick and about eight feet long. It is used to hold the ice-bunker in position in the end of the car and is held in place by five bolts protruding from the roof of the car. In order to remove the bunker beam, it is necessary to remove the nuts from the bolts and then pry the beam down with a crowbar inserted between it and the ceiling. The bunker beam in place is about seven feet

above the floor and therefore from twelve to eighteen inches above the head of the workman. The deceased was engaged in removing such a beam when the accident is alleged to have happened.

The record discloses that a swelling was noticed on the throat of the deceased for several weeks in the spring of 1931, the swelling having the general appearance of a boil or carbuncle. He informed the foreman that he thought he had a goitre and that he was being treated by a local osteopath. Subsequently the swelling broke open and became a running sore. The running sore failed to heal and in December, 1931, and May, 1932, operations were performed and skin grafts made. Due to constrictions in the scar tissue, formed as a result of these operations, the deceased died of strangulation and suffocation on November 8, 1932.

The record also discloses that the deceased continued to work intermittently until a short time before his death. The appearance of his throat became so bad that the attention of other employees was called to it. Many talked with him about it and advised him to take care of it. The superintendent called him into his office and advised him to go to Omaha and see a specialist in order to get proper treatment. During all of this time prior to September, 1932, it was never mentioned to any of his fellow employees by the deceased that his throat condition was due to an injury nor did he claim compensation for any such injury.

It is the contention of the defendant that the deceased never received an injury that caused the throat affliction but that it was the result of a syphilitic condition. While there is much conflicting evidence in the record on the question whether deceased was afflicted with syphilis, it is not necessary for us to determine that point and we will content ourselves by saying that it is at least a possible explanation of the throat ulcer and its failure to heal.

The burden of proof in a compensation case is upon the claimant to establish by a preponderance of the evidence that the injuries complained of are a result of accident arising out of and in the course of the employment. From

an examination of the record in this case, we conclude that. claimant has not sustained this burden. The witness Dooley, who was working with the deceased at the time of the alleged injury, did not see the bunker beam strike the deceased; he was unable to say whether the throat swelling existed before or after the bunker beam is alleged to have fallen; he does not testify that the deceased claimed at the time that he suffered any throat injury on that occasion. The subsequent conduct and statements of the deceased him-self corroborate the theory that the injuries complained of were not the result of an accident. This situation, coupled with the fact that no claim of injury by an accident was ever made to the employer or any of its employees for more than 17 months thereafter, makes it appear that the claim is based on a possibility that the alleged injury could have been caused at that time. This, of course, is not sufficient to establish liability.

"Awards for compensation cannot be based upon possibilities or probabilities, but must be based on sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment." *Bartlett v. Eaton,* 123 Neb. 599, 243 N. W. 772. See, also, *Huffman v. Great Western Sugar Co.,* 125 Neb. 302, 250 N. W.. 70; *Milton v. City of Gordon,* 129 Neb. 888, 263 N. W. 208.

While expert testimony was produced to the effect that trauma could produce the condition with which Price was afflicted, there is no evidence that such was the fact. Claimant contends that the evidence of the statements made by the deceased to his wife, his daughter and to physicians, who treated him long after the alleged accident, is competent to establish that the throat affliction was the result of· an accident arising out of and in the course of his employment. In *Milton v. City of Gordon, supra,* we said: "The declaration of a person which is merely a narrative of a past transaction, made after the transaction to which it relates has been fully completed and shown not to have been spontaneously or involuntarily made, is not admissible in evidence as a part of the *res gestæ.*" To the same effect is .

*Young v. Johnson & Blind,* 113 Neb. 149, 202 N. W. 463. The statements thus made by the deceased fall within the above rule and are not competent testimony to prove the happening of the accident or the injury alleged to have been caused thereby.

The workmen's compensation law of this state provides that in case of personal injury all claim for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation or filed a petition therefor before the compensation commissioner. Comp. St. 1929, sec. 48-138. It is quite apparent from the record in this case that the deceased was under no mental disability after the date of the alleged accident and prior to his death. It is also quite apparent that there was at all times physical evidence of the alleged injury. Under such circumstances the claimant is required to file his petition within a year from the date of the accident. This he did not do. Neither did he give notice of a claim for compensation as required by statute. In *Park v. School District,* 127 Neb. 767, 257 N. W. 219, we said: "In the absence of agreement between the parties in interest and of legal disability of the applicant, no proceedings for compensation can be successfully maintained if no claim is made therefor within six months after the occurrence of the injury and a petition filed therefor within one year after the accident from which the injury results." We are therefore constrained to hold that the claim of the deceased was barred under the circumstances of this case one year after the accident is alleged to have occurred. It having been barred as to the deceased at that time, it is also barred as to his dependents and personal representatives.

In *Lincoln Packing Co. v. Coe,* 120 Neb. 299, 232 N. W. 92, it was held that, where an injured employee negotiated and accepted a lump sum settlement of his claim, upon his death his wife could not maintain an action for a further award. In *Bliss v. Woods,* 120 Neb. 790, 235 N. W. 334, it was held that, where an injured employee elected to sue

for damages at common law and accepted a settlement and dismissed his action, it was a bar to a suit by his dependents to recover again under the workmen's compensation law. Also, in *Welton v. Swift & Co.*, 125 Neb. 455, 250 N. W. 661, it was held that, where an employee, in the absence of fraud, signed a release for an injury, such act was binding upon his dependents after his death.

In the case at bar, the deceased would have been barred from recovering compensation had he lived. Under the holdings of this court his dependents are therefore barred from recovering after his death.

The judgment of the trial court is

AFFIRMED.